A02A1724, A02A2207. ELDRIDGE v. IRELAND (two cases).
(576 SE2d 44)

JOHNSON, Presiding Judge.

Peter Eldridge and Melanie Ana Ireland are the parents of a male child born on October 27, 1999. In February 2000, Eldridge sued to legitimate his son. Eldridge and Ireland agreed to joint legal custody, and a bench trial was held on the issue of child support. The trial court found that Eldridge had an earning capacity of $45,000 per year and awarded Ireland monthly child support of $750. The trial court later denied Eldridge's motion for a new trial, found the motion lacked substantial justification and was interposed for the purposes of delay and harassment, and awarded Ireland attorney fees of $1,250. We granted Eldridge's application for discretionary appeal. In Case No. A02A1724, Eldridge appeals the order of the trial court awarding child support. For the reasons set forth below, we find the order did not meet the statutory requirements for a decree awarding child support, and we vacate the order and remand the case with direction that the trial court issue an order consistent with those requirements. In Case No. A02A2207, Eldridge appeals the award of abusive litigation attorney fees in connection with his motion for new trial. Because the trial court abused its discretion in awarding the fees, we reverse.

## Case No. A02A1724

1. Eldridge works for a family-owned business, Home Health Care Services, Inc. Home Health Care is an Ohio-based company which delivers medical equipment and oxygen to hospitals and to patient homes. The company is owned by Eldridge's mother, and his brother is the president. Eldridge moved to Georgia in 1992 in order to oversee several contracts that Home Health Care had obtained with regional Veterans Administration hospitals. In 1999, Home Health Care competed for, but lost, the bidding for the VA hospital business, and by the end of 1999 had ceased its Georgia-based operations and dismissed its employees. Eldridge stayed in Georgia and began working for Home Health Care on a part-time basis making deliveries. At the time of the trial, Home Health Care continued to

bid on contracts in the region. Eldridge earned over $50,000 in 1998 and over $35,000 in 1999. At trial, Eldridge testified that he was then receiving a salary of $22,000 a year.

After the bench trial, the trial court issued an order awarding Ireland $750 a month in child support. The trial court found that Eldridge was employed and that his earning capacity was $45,000 a year. The court found the existence of a special circumstance: "[i]ncome that should be imputed to a party due to suppression of income."[1] As an additional factor, the trial court found that "[p]laintiff works for family owned and controlled business, and has had supposed substantial reduction in income and responsibility recently."

"OCGA § 19-6-15 (b) provides guidelines for the computation of the child support award and the guidelines are the expression of the legislative will regarding the calculation of child support and must be considered by any court setting child support."[2]

OCGA § 19-6-15 (b) (1) provides that

> child support is to be based upon *gross income of the obligor* and subsections (b) (2) through (b) (4) detail what is to be considered by the trier of fact in arriving at the obligor's gross income. Once gross income has been determined, OCGA § 19-6-15 (b) (5) sets forth the guidelines that are to be used in determining what percentage of obligor's gross income is appropriate to award as child support depending on the number of children involved. Subsection (c) of that same Code section then provides a non-inclusive list of special circumstances which may warrant variations from the amount of child support indicated by the guidelines and specifically requires the trier of fact to make a written finding of special circumstances before such a variance will be permitted to stand.[3]

The trial court made no findings as to Eldridge's gross income. Nor is there any acknowledgment by the trial court that it has varied from the statutory guidelines in its child support award. The amount of child support is clearly calculated based on a percentage of the trial court's finding of Eldridge's earning capacity. In *Duncan v. Duncan*,[4] our Supreme Court noted that an award of child support

---

[1] The order is structured so that the trial court has the option to "check" one or more of the listed special circumstances.

[2] (Citation and punctuation omitted.) *Urquhart v. Urquhart*, 272 Ga. 548, 550 (2) (533 SE2d 80) (2000).

[3] (Emphasis in original.) *Duncan v. Duncan*, 262 Ga. 872, 873 (1) (426 SE2d 857) (1993).

[4] See id.

may be based on the earning capacity of the obligor and not on gross income in certain circumstances. But it is also apparent from *Duncan* that the obligor's gross income is the starting point for a child support determination under OCGA § 19-6-15 (b).

In *Walker v. Walker*,[5] no finding of gross income of a custodial parent was necessary in computing child support of the obligated parent where it was apparent that the custodial parent had no actual income. In contrast, Eldridge is the obligor under the child support decree, and he did have an actual income. And Eldridge's actual income is an issue. A central theme of Ireland's appellate brief is that Eldridge, his testimony notwithstanding, suffered no reduction in income. Eldridge challenges the trial court's finding that he suppressed his income. But in order to review the amount of income imputed by the trial court to Eldridge because of a suppression of income, we would need to make assumptions as to Eldridge's actual income, about which there is no express finding and the amount of which is disputed by the parties.

In *Urquhart v. Urquhart*,[6] our Supreme Court vacated the child support award and remanded the case to the trial court where the order failed to comply with OCGA § 19-6-15 (b) guidelines, including the failure to make a written finding as to the gross income of the child's parents. Similarly, in *Eleazer v. Eleazer*,[7] the Supreme Court vacated the trial court's order of child support and remanded the case where the trial court failed to make a finding as to the parents' gross income.[8] We conclude that in this case the interests of justice are best served by adopting the remedy employed by our Supreme Court in *Urquhart* and *Eleazer*. We vacate section II of the trial court's order awarding child support and remand the case with direction that the trial court issue an order in compliance with OCGA § 19-6-15.

We also vacate section IV of the order in which the trial court awards attorney fees and the fees of the guardian ad litem inasmuch as the trial court made these determinations in the context of its ruling awarding child support.

### Case No. A02A2207

2. The trial court denied Eldridge's motion for a new trial. As part of her response to the motion, Ireland asked for an award of attorney fees under OCGA § 9-15-14. The trial court awarded Ireland

---

[5] 248 Ga. App. 177, 178 (3) (546 SE2d 315) (2001).

[6] *Supra.*

[7] 275 Ga. 482 (569 SE2d 521) (2002).

[8] See also *Corson v. Marbel*, 257 Ga. App. 874 (572 SE2d 397) (2002), in which we remanded the trial court's child support order for failure to comply with the statutory guidelines.

$1,250 in attorney fees pursuant to its finding that Eldridge's motion for a new trial lacked substantial justification and was interposed for the purposes of delay and harassment. OCGA § 9-15-14 (b) authorizes the trial court to impose attorney fees if "it finds that an attorney or party brought or defended an action, or any part thereof, that lacked substantial justification or that the action, or any part thereof, was interposed for delay or harassment." Because an award of attorney fees and expenses of litigation is discretionary under subsection (b), the standard of review by an appellate court is whether the trial court abused its discretion in making the award.[9]

"A motion for a new trial is a proper means of seeking a retrial or reexamination, in the same court, of an issue of fact, or of some part or portion thereof, after decision by a jury or a decision by the court thereon."[10] Eldridge's motion for a new trial extends to the trial court's findings of fact. "[A] motion for new trial may be used in addition to the filing of motions in attacking fact findings, by the court in non-jury trials, contained in the entered judgment."[11] Ireland's reliance on *Alf v. Alf*,[12] for the proposition that a motion for new trial is not an available remedy in a custody case is not sustainable in view of *Adair v. Adair*.[13] We find that Eldridge acted properly in moving for a new trial, and that the trial court abused its discretion by awarding OCGA § 9-15-14 attorney fees to Ireland.

*Judgment vacated and case remanded with direction in Case No. A02A1724. Judgment reversed in Case No. A02A2207. Blackburn, C. J., and Miller, J., concur.*

DECIDED DECEMBER 23, 2002.

*Christopher J. McFadden, Daryl L. Kidd*, for appellant.
*Linda W. Gettle, Larry W. Yarbrough*, for appellee.

---

[9] *Haggard v. Bd. of Regents &c. of Ga.*, 257 Ga. 524, 527 (c) (360 SE2d 566) (1987).
[10] (Punctuation and emphasis omitted.) *Gully v. Glover*, 190 Ga. App. 238, 239 (1) (378 SE2d 411) (1989).
[11] Id.
[12] 226 Ga. 880 (178 SE2d 187) (1970).
[13] 236 Ga. 443 (224 SE2d 21) (1976).